**Glenna R. WOOLF, Appellant,**

v.

**Donna E. SHALALA,\* Secretary
of Health and Human
Services, Appellee.**

**No. 92–3757.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1993.

Decided Sept. 7, 1993.

---

\* Donna E. Shalala has been substituted for Louis W. Sullivan pursuant to Fed.R.App.P. 43(c)(1).

Peter W. Herzog, St. Louis, MO, argued (Mark S. Deiermann and Peter W. Herzog III, on the brief) for appellant.

Eric Tyrone Tolen, St. Louis, MO, argued (Stephen B. Higgins and Eric T. Tolen, on the brief), for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,** Senior District Judge.

WOLLMAN, Circuit Judge.

Glenna R. Woolf appeals from the district court's [1] order affirming the decision of the Secretary of Health and Human Services ("Secretary") to deny Woolf disability benefits. We affirm.

## I.

Woolf filed her present applications for Social Security disability benefits and for Supplemental Security Income ("SSI") benefits on November 10, 1987, and January 13, 1988, respectively. She alleged that she had been disabled since 1981 due to a strain in her spine that she suffered in several automobile accidents, an incident at work in 1982,

---

** The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Steven N. Limbaugh, United States District Judge for the Eastern District of Missouri.

and a fall from her neighbor's porch in 1984.[2] Woolf stated that she had past relevant work experience as a service station attendant, a security dispatcher, a waitress, and a factory worker, but that she had not been employed since 1982.

The Social Security Administration denied Woolf's applications initially and on reconsideration. Woolf then sought a hearing before an administrative law judge ("ALJ"). Woolf, who was 47 years old at the time of the November 30, 1988, hearing, testified that she has continuing pain in her back, for which she has been prescribed pain medication. She is able to live by herself, to drive her car to get groceries, and to do housework with the help of a neighbor. She also stated that occasionally she goes out for social activities but that most often her friends visit her at her home. She testified that she has difficulty lifting bags of groceries and consequently carries her groceries into the house a few items at a time.

The ALJ determined that Woolf was not disabled under the provisions of the Social Security Act and denied her applications for benefits. The ALJ found that although Woolf did have a severe degenerative disease of the lumbar spine, she was currently able to perform her past work as a service station attendant/cashier or as a dispatcher. The Appeals Council denied Woolf's request for further review on May 18, 1989.

Woolf sought judicial review of the Secretary's decision in the district court. On July 5, 1990, Woolf filed a motion seeking to have the case remanded to the Secretary for consideration of additional medical evidence, specifically a letter by her treating physician describing the results of tests performed in May 1989 and October 1989. The district court referred the motion to a magistrate judge,[3] who recommended that the remand motion be denied because the additional evi-

dence was not material and Woolf had not shown good cause for failing to obtain and present this evidence prior to the administrative hearing. The district court adopted the magistrate judge's report and recommendation and denied the motion. The court then directed the parties to file summary judgment motions. Adopting the magistrate judge's report and recommendation on the summary judgment motions, the district court granted the Secretary's motion.

On appeal, Woolf raises two principal issues. First, she contends that the Secretary's decision is not supported by substantial evidence on the record as a whole because the ALJ improperly discounted her subjective complaints of pain and erroneously found that she retained the ability to perform her past work as a service station attendant or a dispatcher. Second, Woolf argues that the district court erred in denying her motion to remand the case to the Secretary for consideration of additional medical evidence.

## II.

Under the Social Security disability and SSI programs,[4] the Secretary shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The impairments suffered must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). Any such impairment must last for a continuous period of at least twelve months or be expected to result in death. *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.-1509, 416.909. To implement the statute, the Secretary has promulgated regulations es-

---

**2.** Woolf had filed two previous sets of applications before the present applications. Both previous applications were denied. The second denial covered the period prior to September 2, 1986. Thus, the present case involves only a claim for benefits after September 2, 1986.

**3.** The Honorable Carol E. Jackson, then United States Magistrate Judge for the Eastern District

of Missouri, now United States District Judge for the Eastern District of Missouri.

**4.** The definitions of disability for purposes of disability benefits and Supplemental Security Income benefits are identical. *See* 20 C.F.R. § 404.1505 et seq. (disability) and § 416.905 et seq. (SSI).

tablishing a sequential five-step procedure for determining whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992) (describing the process). The claimant bears the initial burden of proving a disability. *Locher,* 968 F.2d at 727.

■■■ When reviewing a denial of benefits, we will uphold the Secretary's final decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991). Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion. *Whitehouse,* 949 F.2d at 1006 (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In assessing the substantiality of the evidence, we must consider evidence that detracts from the Secretary's decision as well as evidence that supports it. *Locher,* 968 F.2d at 727 (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). We may not, however, reverse the Secretary's decision "merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker,* 730 F.2d at 1150).

■■■ "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991). Having reviewed the administrative record, we find that there is substantial evidence to support the ALJ's decision that Woolf's back problems are not so severe as to be disabling and that Woolf could return to her past work as a service station attendant or a dispatcher.

There is little or no objective medical evidence in the record that would support a finding that Woolf's back problems are disabling. The medical records do show that Woolf suffers from some degenerative disc disease, especially in the lumbar spine. This diagnosis has not changed over the course of the ten years of medical records that are in the administrative record. Additionally, a CT scan performed in August 1982 disclosed a mild posterior bulging at the L4–L5 space in Woolf's lumbar spine. Some subsequent tests have also shown this bulging, while

others have not. At any rate, no test result has demonstrated that this condition has increased in severity beyond a mild bulging. Also, the physicians' reports are consistent in stating that Woolf has no neurological or neuromuscular deficits.

The report of Dr. Scott Sale, who examined Woolf on July 31, 1987, provides further support for the ALJ's finding of no disability. Dr. Sale noted that Woolf's gait was normal and that she was able to get on and off the examining table without difficulty, but that she appeared to have some tenderness in the cervical and dorsal lumbar spine areas. In all, Dr. Sale concluded that his physical examination of Woolf and review of her x-rays showed no neurological impairment and that Woolf's pain was "out of proportion to muscle spasm secondary to motor vehicle accident."

Finally, Woolf's testimony at the administrative hearing provides additional support for the ALJ's decision. Although Woolf testified that she has considerable pain, she acknowledged that she is able to live by herself, to drive her car, to shop for groceries, and to do the housework with some help from a neighbor. Furthermore, Woolf acknowledged that physical therapy has relieved her condition somewhat.

It is true that Woolf's testimony also contained evidence of limitations on her daily activities. For example, Woolf stated that she does not sleep well, that a neighbor takes care of mowing her lawn, that she carries her groceries into her house in small parcels, and that it would hurt her to walk more than a single block. Although these pieces of evidence, if accepted as credible, might have proved sufficient to support a finding of disability, we are not allowed to substitute our opinion for that of the ALJ, who enjoys a closer position to the testimony in support of an application. *Locher v. Sullivan,* 968 F.2d at 727 (court may not reverse merely because substantial evidence would have supported an opposite decision).

■■■ Woolf contends, however, that two doctors have opined that she is disabled. We find that the ALJ properly discredited their opinions of disability. In a letter dated December 14, 1987, Dr. William Poggemeier

stated that Woolf is totally disabled because of an injury to her coccyx. Dr. Poggemeier, however, admitted that he had performed no tests to support his conclusion. Consequently, the ALJ properly discredited his testimony. *See Vasquez v. Schweiker,* 701 F.2d 733, 736 (8th Cir.1983) ("The credibility of a medical opinion is particularly suspect when it is based on incomplete evidence.").

■ We find that the ALJ also was justified in discrediting the opinion of disability by Dr. Emil DiFilippo, notwithstanding the fact that Dr. DiFilippo has been Woolf's primary treating physician for her back problems since 1981. Throughout his treatment of Woolf, Dr. DiFilippo has consistently diagnosed Woolf's condition as an acute cervical, thoracic lumbar strain and has found no neurological or neuromuscular deficits. He has prescribed ongoing physical therapy, to which Woolf has responded positively. In March 1985, Dr. DiFilippo reported that he thought Woolf was capable of gainful employment at that time, but that she could not do heavy lifting or stand for prolonged periods of time. In July 1986, Dr. DiFillipo repeated his conclusion that Woolf could be gainfully employed, as long as the job did not require heavy lifting, prolonged standing of more than one hour, or excessive stair-climbing. These conclusions are consistent with his objective medical findings of no neurological deficits, no significant motor loss, no sensory loss, and no reflex loss.

Dr. DiFillipo's only statement in the administrative record supporting a finding of disability appears in a letter dated May 2, 1988. Dr. DiFillipo acknowledged that he had found no gross neuromuscular abnormalities and that Woolf continued to be ambulatory. Despite this acknowledgement, Dr. DiFilippo concluded that "in view of her severe, incapacitating pain" Woolf was not capable of gainful employment. Thus, Dr. DiFilippo's conclusion of disability in May of 1986 rested solely on Woolf's complaints of pain. He pointed to no objective medical evidence that Woolf's condition had changed substantially since he first began to treat her and had concluded that she could perform light work. Consequently, his conclusory statement of disability contradicting his earlier opinion

was entitled to little weight. *See Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir.1989) (opinion of treating physician is entitled to great weight only so long as it is supported by medically acceptable clinical or diagnostic data).

■ Woolf also argues that the ALJ improperly discounted her subjective complaints of pain. We find that the ALJ correctly analyzed Woolf's subjective complaints of pain according to the standards we adopted in *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir.1984) (subsequent history omitted) (subjective complaints may be discounted if there are inconsistencies in the record as a whole). As discussed earlier, there is no substantial objective medical evidence of a disabling condition. Consistent with the lack of objective medical evidence, Dr. Takao Suzuki, who administered a psychological examination to Woolf, concluded that Woolf tends to internalize her feelings and lives under a "high degree of tension," which often leads to a variety of physical symptoms, including severe headaches. Dr. Suzuki also reported that Woolf is emotionally immature, seeks affection and attention from others, and is likely to have "numerous psychosomatic complaints." Further, the ALJ also noted that Woolf's poor work history lessened her credibility. Additionally, Woolf acknowledged that physical therapy alleviates her condition. Woolf's daily activities demonstrate that she has some limitations, but that she has the capability to live on her own and perform necessary daily activities. These inconsistencies with Woolf's application support the ALJ's conclusion that Woolf's testimony was credible to the extent that she has some pain, but not to the extent that she cannot perform any type of work. *See Benskin v. Bowen,* 830 F.2d 878, 883–85 (8th Cir.1987).

### III.

■ Woolf also argues that the district court erred in denying her motion to remand the case for consideration of additional medical evidence. Specifically, Woolf contends that the district court should have directed the Secretary to consider a letter from Dr. DiFilippo describing the results of a CT scan

performed in May 1989 and an electromyography (EMG) and nerve conduction study conducted in October 1989. Woolf claims that this new evidence would provide objective medical evidence to support her subjective claims of pain.

The Act grants reviewing courts the authority to order the Secretary to consider additional evidence, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Chandler v. Secretary of Health and Human Servs.*, 722 F.2d 369, 371 (8th Cir. 1983). To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination. *See Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984) (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981)). Under this standard, we find that the additional evidence is not material.

Dr. DiFilippo's letter is ambivalent about Woolf's condition. He states that an EMG and a nerve conduction study, conducted in October 1989, show some nerve entrapment in the right wrist and "evidence of a C8 lesion in the areas of the left upper extremities originating from the area of the neck." As counsel for Woolf acknowledged at oral argument, Woolf's present application makes no mention of disability in her wrists. Thus, the evidence concerning her wrist, which might support a new application, has no bearing on the condition she has alleged is disabling. Moreover, Dr. DiFilippo stated that he had seen the patient twice since the October 1989 tests and that he was "unable to detect an obvious neurological deficit ... despite the findings on [the] EMG and nerve conduction studies."

Dr. DiFilippo's letter also states that Woolf underwent tests at St. Joseph Health Center in May 1989. X-rays of the lumbar spine were negative and revealed no change from a previous examination on July 13, 1988. A bone scan also was negative. Nonetheless, Woolf points to a CT scan on her lumbar spine that was reported to have shown a bulging disc at the L4–L5 level. This material is not new, however. Several tests had revealed bulging at the L4–L5 level since Woolf began complaining of back pain in 1981. Consequently, we find no need to submit this additional evidence to the ALJ because there is not a reasonable likelihood that it would change his determination of no disability.

The district court's judgment is affirmed.