**Mary Ellen FOX, Plaintiff,**

**v.**

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**No. CIV. 4–96–CV–90876.**

United States District Court, S.D. Iowa, Central Division.

Oct. 28, 1997.

H. Edwin Detlie, Ottumwa, IA, for Plaintiff.

John E. Beamer, Asst. U.S. Atty., Des Moines, IA, for Defendant.

MEMORANDUM AND ORDER

PRATT, District Judge.

Plaintiff, Mary Ellen Fox, filed a Complaint in this court on December 16, 1996, seeking review of the Commissioner's decision to deny her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 (1994). This court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is affirmed.

1. President Clinton appointed Kenneth S. Apfel to serve as Acting Commissioner of Social Security, effective September, 29, 1997, to succeed John J. Callahan. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.

## BACKGROUND

Plaintiff filed an application for disability benefits on October 25, 1994, claiming an onset of disability date of June 15, 1991. Tr. at 92–94 Her application was denied initially and upon reconsideration. After a hearing (Tr. at 38–80), Administrative Law Judge Jean M. Ingrassia (ALJ) issued a decision on February 14, 1996, denying benefits, Tr. at 15–28. On November 1, 1996, the Appeals Council denied Plaintiff's request for review. Tr. at 3–4. Plaintiff filed this Complaint on December 16, 1996.

## STANDARD OF REVIEW

We will uphold the Commissioner's determinations if they are supported by substantial evidence on the record as a whole. *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir.1994). Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993). "In assessing the substantiality of the evidence, we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." Id. We cannot overturn the Commissioner's decision merely because of the existence of substantial evidence supporting a different outcome. *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993).

*Spradling v. Callahan,* 126 F.3d 1072 (8th Cir.1997). In making this inquiry, a court should neither consider a claim de novo nor abdicate its function to carefully analyze the entire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975). The claimant bears the burden of proving a medically determinable impairment or impairments which prevent her from performing her past relevant work. *McClees v. Shalala,* 2 F.3d 301, 302 (8th Cir.1993).

## ALJ'S FINDINGS

Although not addressed in the AL's Decision, the record indicates that Plaintiff last met the earnings requirement of the Act at the end of March, 1996. (Tr. at 95). That is to say, Plaintiff must prove that she became disabled on or before that date. *Grebenick v.*

*Chater,* 121 F.3d 1193, 1196 (8th Cir.1997). The AL, following the sequential evaluation found at 20 C.F.R. § 404.1520, found that Plaintiff has not engaged in substantial gainful activity since June 15, 1991, although Plaintiff had continued to work since that time. The ALJ found that Plaintiff has a severe impairment, namely asthma. The ALJ found that this impairment is not severe enough to meet or equal any of the impairments listed in Appendix 1, Sub-part P, Regulations No. 4. (Tr. at 31) The ALJ found:

> The claimant has the residual functional capacity to perform work-related activities except work which involves lifting more than 10 pounds at a time, walking more than a total (not all at one time) of two hours throughout an eight-hour workday, sitting longer than two hours at a time for a total of at least six hours throughout an eight-hour workday, exposure to extremes of heat or cold, exposure to excessive amounts of fumes and smoke, and work which would not allow her to alternate sitting and standing for a few minutes every hour for comfort (20 C.F.R. [§ ]404.1545).

At the fourth step of the sequential evaluation, the ALJ found that Plaintiff's impairment does not prevent her from performing her past relevant work as an administrative secretary or an office assistant. Tr. at 27.

## DISCUSSION

### OPINION OF THE TREATING PHYSICIAN

■ Plaintiff argues that in making the finding that Plaintiff can do her past relevant work, the ALJ improperly disregarded the opinion of the treating physician and, therefore, that the ALJ's Decision is not supported by substantial evidence on the record as a whole. Plaintiff points to a letter dated August 4, 1995, from Donald R. Wirtanen, D.O. Tr. at 218–219. In this letter Dr. Wirtanen states:

> Mrs. Fox is only capable of lifting 5 lbs. maximum occasionally and 1 lb. maximum frequently during an 8 hour day. She is capable of walking without interruption for 15 minutes and approximately 1½–2 hours

during an 8 hour work day. She is able to sit for about 2 hours without interruption or 6 hours in an 8 hour day. She would need to alternate standing and sitting every 15 minutes and would need to lie down for 1 hour each work day due to fatigue and shortness of breath.

Tr. at 218. Dr. Wirtanen concluded his letter: "In my medical opinion, I do not believe that Mrs. Fox could physically work in any means of gainful employment without subjecting herself to significant problems on a daily basis, and do expect that this condition is permanent and progressive." Tr. at 219.

The opinion of the treating physician controls if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Smallwood v. Chater,* 65 F.3d 87, 89 (8th Cir.1995) (quoting 20 C.F.R. § 404.1527(d)(2)). In *Smallwood,* the ALJ had rejected a treating physician's opinion that the claimant could only work 4 hours per day. While the Court held that it was proper for the doctor to opine as to the hours a claimant can work, the Court also held that in Smallwood's case, the doctor's opinion was conclusory and was contradicted by substantial evidence. In the case of *Ward v. Heckler,* 786 F.2d 844 (8th Cir.1986), Ward argued that the opinion of his treating physician was entitled to more weight than that of a consultative examiner. The Court, however, wrote that the trier of fact may discount medical reports that are unsupported by medically acceptable clinical or diagnostic data.

> Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statement were conclusory in nature. *Brand v. Secretary of the Department Of HEW,* 623 F.2d 523, 527–28 (8th Cir.1980).

*Ward v. Heckler,* at 844.

In the opinion of the Court, the ALJ articulated legitimate reasons for discounting the residual functional capacity given by Dr. Wirtanen. See Tr. at 24. The ALJ stated that the pulmonary function studies and chest x-rays available to Dr. Wirtanen did not support his opinion. The Court agrees. A chest x-ray dated May 7, 1990 was normal. Tr. at 133. On February 5, 1991, a report of a chest x-ray states: "No evidence of acute pleural pulmonary disease. Cardio pericardial silhouette is within normal limits." Tr. at 147. A pulmonary function test dated February 13, 1992, showed "mild obstructive lung disease". Tr. at 148. Pulmonary function studies dated April 13, 1992, June 29, 1992, and September 25, 1992 were interpreted "normal" or "mild". Tr. at 149–151. A chest x-ray dated January 4, 1993 showed: "no evidence of acute pleuropulmonary disease. Tr. at 152. Moderate obstructive lung disease was reported on January 4, 1993. Tr. at 153. Small airway disease was reported April 5, 1993. Tr. at 154. An x-ray report dated June 8, 1993 reads: "The heart and pulmonary vessels are normal in size. The lungs and pleural spaces are clear. No infiltrate, effusion, or pneumothorax is visible. No Bony abnormalities are identified." Tr. P. 156. A chest x-ray dated December 23, 1994 was normal. The report states: "The heart and pulmonary vessels are normal in size. The lungs and pleural spaces are clear. No infiltrate, effusion, or pneumothorax is visible. No bony abnormalities are identified." Tr. at 171. Plaintiff underwent spirometic testing December 29, 1994. Tr. at 187–197. The test results were normal. Tr. at 197. A pulmonary function study dated August 29, 1995, after the administrative hearing, showed moderated obstructive lung disease, however there was significant change after the administration of a bronchodilator. Tr. at 229.

The ALJ wrote:

> It is also noteworthy that, at the time the claimant stated she was doing poorly with her asthma due to stress at work, Dr. Herrmann, the pulmonary specialist, described her as doing "extremely well," "very, very well," and "very well." Each of her exacerbations was after exposure to extremes of cold or a very dusty environment such as when she helped her husband remodel a house, or some other exacerbating factor. In each of those oc-

casions, she also very quickly and rapidly improved and returned to normal. Tr. at 24. Again, the Court agrees with the ALJ. Plaintiff was seen by Dr. Herrmann on February 7, 1991, at which time Plaintiff was being seen for a follow up visit after being seen in the emergency room on February 5 with another exacerbation of her asthma. Plaintiff was instructed to complete the Medrol Dosepak she had been given at the hospital, and to continue her other inhalers. She was told to return to the clinic in a month. Tr. at 135. When seen on March 7, 1991, Plaintiff's asthma was doing "quite a bit better." And, Plaintiff remarked that she had forgotten what it was like to be able to take a deep breath. She was having no significant cough or sputum production, and no sore throat. When she was seen May 29, 1991, Plaintiff had been doing "extremely well." She asked to minimize the number of medications she took. On August 5, 1991, Plaintiff stated that her breathing had been doing "very, very well". She had reduced the use of Alupent and was told to cut back on the use of Azmacort. Tr. at 136. Plaintiff was not seen again until October 11, 1991 at which time she had been out in the cold weather and developed some upper respiratory tract congestion and drainage. Since that time, her breathing was worse and she had increased wheezing accompanied by a cough. The doctor remarked that Plaintiff had returned to the clinic at an appropriate time. When seen a month later, Plaintiff was doing quite well. Plaintiff told the doctor that she had no significant dyspnea on exertion and no significant cough or sputum production. Plaintiff had cut back on her medications. She was told to contact the doctor if she began to have good days/bad days which would indicate that she had continued airway inflammation. She was told to return to the clinic in three months. Tr. at 137. On March 24, 1992, Plaintiff reported that she had been helping her husband remodel a home which included tearing out walls and exposure to considerable dust. She had developed fatigue and dyspnea and shortness of breath even at rest. Tr. at 138. Plaintiff noted a very rapid improvement in her breathing with the medication prescribed. When seen April 13, 1992, she was breathing "relatively normal". Her spirometry was essentially normal which the doctor stated was indicative that the asthma was well under control. The doctor wrote: "I do also get the feeling from Mrs. Fox that she is beginning to realize that she does have a significant amount of control over her disease and there are definitely ways to avoid the exacerbations that she has had in the past." Plaintiff told the doctor that she realized that she could not do activities such as home remodeling. On June 29, 1992, Plaintiff told the doctor that she had "occasional mild worsenings on exposure to certain irritants, but otherwise has been doing well." Tr. at 139. Dr. Herrmann stated that Plaintiff was doing quite well when seen on September 25, 1992, and January 4, 1993. Plaintiff's spirometry studies were, however, worse on both occasions. On June 5, 1993, Plaintiff was doing quite well since the last visit, and was wanting to cut back on her medication. Dr. Herrmann noted that the spirometry was much improved from January. Plaintiff returned to the doctor on June 11, 1993, after having been seen in an emergency room on June 8. Over the previous three days, Plaintiffs breathing had nearly returned to normal and she was decreasing her dosage of Prednisone. Tr. at 141. When Plaintiff was seen August 12, 1993, she was "doing extremely well with no shortness of breath or cough of significance." Tr. at 143.

The Court has searched the medical records to find support for the restrictions set out in Dr. Wirtanen's reports to no avail. Dr. Wirtanen's opinion of Plaintiff's residual functional capacity can only be viewed as conclusory. In *Smallwood v. Chater*, 65 F.3d at 89, the Court wrote: "When faced with a conclusory opinion by a treating physician, the Commissioner need only come forth with 'some medical evidence' that the claimant can work." (Quoting *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir.1995)). After the hearing, the ALJ sent Plaintiff to Veronica W. Butler, M.D. for a consultative examination. Dr. Butler not only did a physical examination (Tr. at 224), she also had the results of a pulmonary function study which showed a significant change, for the better, after administration of a bronchodilator. Tr. at 229.

While Dr. Butler diagnosed severe steroid dependent asthma with worsening symptoms over the previous 18 months, she also opined that Plaintiff was able to sit without limit, lift less than 25 pounds, and stand/walk four hours out of eight—30 minutes at a time. Tr. at 227–228. Thus, Dr. Butler provides "some medical evidence" that Plaintiff is able to do her past relevant work. In *Ward v. Heckler*, 786 F.2d at 844, it is written:

> In sum, the conclusory nature of Dr. Reynolds' opinion of the severity of Ward's condition, the contradictory medical evidence supplied by other physicians, and the factual circumstances involved in this case combine to discredit Dr. Reynolds' conclusions. Viewing the record as a whole, therefore, we conclude that the ALJ's determination to that effect was supported by substantial evidence.

Likewise, in the case sub judice, the opinion of Dr. Wirtanen is conclusory, and contradicted by the medical records provided by Dr. Herrmann, and by the opinion of Dr. Butler. In such circumstances, the Court finds no fault with the ALJ's determination.

## ALJ'S CREDIBILITY FINDING

■ Plaintiff argues that the ALJ improperly discredited her complaints of pain. In the Eighth Circuit, the standards for evaluating the credibility of a claimant's testimony were set out in the case of *Polaski v. Heckler*, 739 F.2d 1320, 1322, (8th Cir.1984) (subsequent history omitted). *Polaski* provides that subjective complaints can not be discredited "solely" because they are not supported by objective medical evidence. In the opinion of the Court, the factors set out in *Polaski* were fully considered by the ALJ. Plaintiff's daily activities of assisting her husband clean apartments, among other things, do not support her contention that she could not do her sedentary past relevant work. Because of the rapidity with which Plaintiff's symptoms resolve, the duration, frequency and intensity of Plaintiff's symptoms do not support her contention that she can not do her sedentary past relevant work. Plaintiff's precipitating and aggravating factors include being in dusty conditions, such as when she was helping her husband tear out the walls of a house (Tr. at 138) or when she was exposed to chemical cleaners while shopping (Tr. at 169) or being in extremes of weather (e.g. Tr. at 137 which states that Plaintiff developed upper respiratory tract congestion and drainage after being out in the cold weather). The vocational expert was told that Plaintiff cannot tolerate a polluted environment or environments that are hot and humid, dusty, cold, or that have fumes and smoke before he opined that Plaintiff is able to do her sedentary past relevant work. Tr. at 74.

Plaintiff testified that stress aggravated her asthma attacks and caused her to seek medical care and to quit working. Tr. at 62, and 86. There is no evidence, however, that Plaintiff complained of stress to her doctors, or that she sought any mental health care, or that any medication was prescribed to help Plaintiff cope with stress. As the ALJ stated: "There is likewise nothing in the record to support the claimant's contention that stress caused her to quit her job in 1991." Tr. at 25.

The ALJ also considered the numerous observations in the medical records, discussed above, regarding Plaintiff's excellent response to her medications. Although Dr. Wirtanen mentioned a need to lie down for one hour each work day due to fatigue and shortness of breath (Tr. at 218), Plaintiff testified that she did not rest more than a half hour per day, and in a recliner, rather than laying down. Tr. at 69–70. The vocational expert testified that a half hour rest period would be compatible with competitive employment, and in particular with Plaintiff's sedentary past relevant work. Tr. at 74. In the opinion of the Court, the ALJ articulated sufficient reasons to discredit Plaintiff's testimony that she is unable to do her sedentary past relevant work.

Plaintiff argues, vigorously before this court and before the Appeals Council, that the ALJ's credibility finding should not stand because she wrote that among the reasons for discrediting Plaintiff was the fact that "she appeared motivated to qualify for disability benefits". The ALJ cited *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir.1992). Tr. at 25. Not surprisingly, the Commissioner argues the opposite position. In the opin-

ion of this Court, the case at bar does not turn on whether or not Plaintiff is motivated to qualify for benefits. Were Plaintiff not motivated to qualify for benefits, she probably would not have made an application. Nor does the case turn on whether or not *Dodd* stands for this proposition. As stated above, the ALJ articulated, and the record supports, enough legitimate reasons for discrediting Plaintiff's testimony that pass muster under the *Polaski* cases, that the Court need not attempt to resolve this argument.

## DECISION

It is the holding of the Court that Plaintiff did not meet her burden of proving that she is unable to perform her past relevant work. The Court has reviewed the entire record in detail, considering the evidence which supports, as well as evidence which detracts from, the ALJ's decision. The decision of the ALJ is supported by substantial evidence on the record as a whole and is not affected by errors of law that require reversal or remand. Plaintiff's motion to reverse the Commissioner is denied. The Commissioner's motion to affirm the ALJ's decision is granted.

The decision of the ALJ, which became the final decision of the Commissioner, is affirmed. The Clerk will enter judgment accordingly.