# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2215
_____

Rick A. Whitman

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 17, 2014
Filed: August 7, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

RILEY, Chief Judge.

Rick Whitman applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Acting Commissioner of Social Security (Commissioner) denied Whitman benefits, and the district court[1] affirmed the

_____

[1]The Honorable Jon Stuart Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Commissioner's decision. Whitman appeals. We have appellate jurisdiction under 28 U.S.C. § 1291. We affirm.

## I. BACKGROUND

Rick Whitman claims he has been disabled since June 15, 2007, because of degenerative disc disease and right thumb degenerative joint disease. Whitman's spotty work history since 1997 consists of manual labor jobs, and he has not worked at all since his alleged onset date.

Whitman was incarcerated from November 2007 to October 2008. As part of his disability application, Whitman submitted a prison "intake screening" stating Whitman had "[l]ower back problems due to numerous falls" and a physical report stating he had a history of "lower back pain [and] report[ed] Tylenol [was] not helping much." The medical practitioner listed her impressions as "44 [year old] healthy male" with "[history] of chronic lower back pain" and prescribed ibuprofen, with "no [work] restrictions." Whitman's "Exit Status" report upon his release did not list back pain as a "health problem," although he was again prescribed ibuprofen.

Whitman submitted no medical records from the time of his release in October 2008 until he was evaluated for his disability application in March 2010. On March 8, 2010, Whitman's back x-ray, interpreted by Ryan M. Holthaus, M.D., showed "[n]o lumbar spine fracture or dislocation" and "normal alignment," but "[m]oderately severe L5-S1 degenerative disk disease." On March 17, 2010, Whitman was personally evaluated by Thomas C. Graham, M.D., who reported Whitman complained of "unbearable back pain for the past two years," which Whitman attributed to falls he had suffered during his work life. Whitman told Dr. Graham he had severe pain at night that interfered with his ability to sleep. Whitman "also state[d] that he can't walk . . . any distance without developing severe pain in his back," and had trouble bending forward and straightening back up. Dr. Graham stated

conclusively, "[Whitman] is disabled now and not able to work at all." Dr. Graham wrote:

> I feel he has generalized osteoarthritis especially in his back, right wrist, and right thumb. . . . I think he is truly disabled due to his back. I think it would be very difficult for him to carry or lift anything of any weight. Standing, moving about, walking, and sitting for an 8 hour day would be very difficult for him. Stooping, climbing, kneeling, and crawling would be very difficult.

In contrast, Whitman's initial medical records evaluating physician, Mary Greenfield, M.D., assigned Whitman a residual functional capacity (RFC) stating he could occasionally lift twenty pounds, frequently lift ten pounds, and stand or walk and sit about six hours in an eight-hour work day, with unlimited push and pull activities. Dr. Greenfield considered but discounted Dr. Graham's assessment, giving it

> little weight since it is more restrictive than self reported activities. [Whitman] reports . . . he is able to lift 50-100 pounds but it is painful, carry 20-30 pounds, walk 1-2 blocks, and uses cane when back gets real bad. [Whitman's] allegations are eroded to some degree by his failure to seek related care and to report the degree of functional limitation that he reports to this agency.[2]

The Commissioner denied Whitman's application on initial review. Upon reconsideration a few months later in June 2010, a second physician evaluating medical records, Jan Hunter, D.O., affirmed Dr. Greenfield's RFC. The Commissioner denied Whitman's application on reconsideration.

---

[2]Whitman admitted he "[c]an lift 50-100 lbs but very painful[], can't carry very much[,] maybe 20-30 lb[s]."

In May 2011, Whitman presented to Joseph A. Brunkhorst, M.D., complaining of back pain. Other than Dr. Graham's disability evaluation over a year earlier, this was the first time Whitman sought medical care since his release in October 2008. Dr. Brunkhorst prescribed a regimen of a prescription pain reliever for Whitman's back pain. In July 2011, Whitman returned to Dr. Brunkhorst's clinic, but saw David L. Van Gorp, M.D. Dr. Van Gorp wrote, "Apparently, [Whitman] call[ed] and the nurses said he had to have an appointment and wouldn't refill his meds. When he sees me he says he need[s] something stronger." Dr. Van Gorp prescribed a narcotic, commenting, " I [am] not sure about him in terms of chronic usage. We will let Dr. Brunkhorst sort it out."

Whitman appealed the Commissioner's denial of benefits to an Administrative Law Judge (ALJ), who heard Whitman's case on November 7, 2011. Whitman appeared pro se and testified he was not interested in legal representation. Whitman said he was disabled because his "lower back and [his] hips don't hold in place," and he has "sciatic nerve damage that runs down [his] left leg," "arthritis in [his] wrists, [his] elbows[, and his] shoulders," "a neck problem that hasn't been diagnosed yet," and "real bad headaches two to three times a week." Whitman stated he had seen no doctor other than Dr. Brunkhorst because of a lack of insurance, but he hadn't "tried any of the charity hospitals" within the last thirty years. Whitman stated he could lift twenty-five pounds once or twice an hour.

Also at the ALJ hearing, a vocational expert testified that someone with Whitman's RFC, as stated by Dr. Greenfield, would be able to perform at least three jobs of which there were thousands of openings in Iowa and hundreds of thousands of openings nationally.

The ALJ upheld the Commissioner's denial of benefits, finding "the medical evidence does not support a finding of total disability." Like Dr. Greenfield, the ALJ discredited Dr. Graham's opinion because "it is more restrictive than self-reported

-4-

activities." The ALJ considered the factors articulated in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984) (order), and stated,

> Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

The ALJ concluded Whitman "has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in the claimant's history of treatment." In addition to the "inconsistencies" that "eroded" Whitman's credibility, the ALJ noted that Whitman had received unemployment compensation throughout 2010, during the time he alleges he was disabled. The ALJ also commented that Whitman "acknowledged being incarcerated for indecent contact with a child from November 2007-October 2008, which could also be affecting his ability to obtain employment in and of itself."

Whitman appealed the ALJ's decision to the Appeals Council and submitted a new medical record dated January 25, 2012, from Dr. Brunkhorst. Dr. Brunkhorst assessed Whitman as follows:

> Back pain at the present time I don't think i[s] surgical, I think he needs physical therapy. . . . As far as is he entitled to disability? With the amount of pain pills he is taking and the way he acts he appears to be in a lot of pain. . . . I feel that he is probably entitled to some disability because of the amount of pain that he has and his frustration of trying to get a job[.]

After considering Dr. Brunkhorst's note, the Appeals Council declined review of Whitman's claim.

Whitman, represented by counsel, sought judicial review in the district court pursuant to 42 U.S.C. § 405(g). After full briefing by the parties, and six months after filing his complaint, Whitman moved to remand for the ALJ to consider additional medical evidence. The district court denied the motion and affirmed the ALJ's decision.

## II. DISCUSSION

### A. Standard of Review

"The claimant bears the burden of proving disability." Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011). "[I]n order to receive benefits," Whitman "must show that he was disabled on or before" June 30, 2011, "his date last insured." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See 20 C.F.R. §§ 404.101, 404.130-.131. Because the Appeals Council declined review of Whitman's claim, "the ALJ's decision [is] the final decision of the Commissioner." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "'We review de novo the District Court's determination of whether substantial evidence on the record as a whole supports the ALJ's decision.'" Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009)). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005) (quoting Young, 221 F.3d at 1068).

> [W]e will not reverse an administrative decision "simply because some evidence may support the opposite conclusion. If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."

-6-

Medhaug, 578 F.3d at 813 (internal citation omitted) (quoting Goff, 421 F.3d at 789). On appeal, we consider the January 2012 medical record Whitman supplied to the Appeals Council. See, e.g., Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000).

### B.    Substantial Evidence

"[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Goff, 421 F.3d at 790 (alteration in original) (quotations omitted). "In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007).

First, Whitman complains the ALJ did not give enough weight to Dr. Graham's opinion. But Whitman himself calls Dr. Graham a "consultative examiner," rather than a treating physician. The record shows Dr. Graham examined Whitman on only one occasion, and Dr. Graham's assessment is based largely on Whitman's subjective complaints (other than the clinical appearance of his right thumb and a reduced range of motion in his spine), as opposed to "well-supported . . . medically acceptable clinical and laboratory diagnostic techniques." Goff, 421 F.3d at 790 (internal quotation omitted). The ALJ reasonably stated he discounted Dr. Graham's opinion because his opinion was "more restrictive than self-reported activities. In other disability filings, the claimant reported to Iowa Disability Determination Services that he is able to lift 50-100 pounds but it is painful, carry 20-30 pounds, walk 1-2 blocks, and [sometimes] uses a cane." The ALJ's conclusion also is supported by Whitman's admission at his hearing that he could lift "[m]aybe 25 pounds" "off the floor [and] put it on the table" "a couple times" an hour.

Second, Whitman objects to the ALJ's observation about the infrequency of his medical care. Whitman states he "did not obtain consistent treatment because he did

not have insurance and could not afford treatment." "It is for the ALJ in the first instance to determine a claimant's real motivation for failing to follow prescribed treatment or seek medical attention," Hutsell v. Sullivan, 892 F.2d 747, 750 n.2 (8th Cir. 1989), and "the fact that [the claimant] is under financial strain is not determinative," Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992). "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). The ALJ properly considered Whitman's relative lack of medical care, including his failure to seek care from "charity" providers, as relevant, considering Whitman's allegations of "unbearable back pain for the last two years." As the Commissioner's brief explains, "Aside from the prison intake examination, [Whitman] sought no medical treatment for his allegedly disabling pain until May 2011, nearly four years after his alleged onset of disability and one month before his insured status expired."

Third, Whitman alleges that the ALJ failed to consider whether Whitman had a legitimate reason for his failure to seek more frequent care, such as a lack of "free care" in Whitman's area. To be sure, the ALJ has a "duty to develop the record." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). But the fact that Whitman appeared pro se does not relieve him of the burden to establish disability. See e.g., Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Our review of the hearing transcript confirms the ALJ sufficiently developed the record. See id. Given the ALJ's development of the record, Whitman has simply not established good cause for not seeking medical care, even in his own hometown, that would be commensurate with an onset of disability in June 2007 through June 30, 2011. See, e.g., Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004).

Finally, Whitman objects to the ALJ noting Whitman's treating physician (presumably Dr. Brunkhorst) had not recommended any restrictions for Whitman. See

Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment."). We do not read the ALJ's passing reference to this fact as determinative to the ALJ's decision, considering the substantial evidence that otherwise supports the ALJ's RFC determination.

In summary, "even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where the evidence as a whole supports either outcome." Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003). The evidence here supports the ALJ's decision, even if "some evidence," Dr. Graham's opinion, "may support the opposite conclusion." Medhaug, 578 F.3d at 813 (quoting Goff, 421 F.3d at 789). We agree with the district court "that the ALJ properly articulated his reasons for granting 'little weight' to Dr. Graham's opinions, and for finding Dr. Graham's opinions to be inconsistent with the record as a whole," "that the ALJ properly considered Whitman's medical records, observations of treating physicians, and Whitman's own description of his limitations in making the RFC assessment for Whitman," and "that the ALJ made a proper RFC determination based on a fully and fairly developed record."

### C.    Credibility Finding

"'[Q]uestions of credibility are for the [ALJ] in the first instance. If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.'" Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) (alterations in original) (quoting Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006)).

Here the ALJ considered the Polaski factors and concluded Whitman's "acknowledged functional capabilities during the disability process have far

outweighed what he testified to at the hearing" and Whitman's "limited daily activities [could not] be objectively verified." The ALJ considered the fact Whitman did not seek much medical care for his "unbearable" pain, along with Whitman's "discrepancies in information reported . . . to various treating sources," and that Whitman's alleged limitations were not consistent with the amount of medical care he had sought.

The ALJ also called attention to Whitman's application for unemployment compensation, noting the implication that Whitman was capable of work,[3] saying,

> The claimant's credibility is also eroded by receipt of unemployment compensation throughout 2010 (Exhibit 3D) when he alleges that he was disabled. From an evidentiary standpoint, under section 96.4(3) of the Code of Iowa, an individual applying for unemployment compensation is eligible for such compensation if "[t]he individual is able to work, is available for work, and is earnestly and actively seeking work."

(Alteration in original). The ALJ acknowledged, "Applying for unemployment compensation does not prove by itself that the applicant is not disabled. Nevertheless, it is compelling and seriously undermines a claimant's assertion that he is incapable of working in competitive employment." See, e.g., Johnson v. Chater, 108 F.3d 178, 180-81 (8th Cir. 1997) ("'[A] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work.' . . . Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability." (quoting Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991))).

_____

[3]As Whitman's counsel pointed out at oral argument, Whitman's unemployment application is not part of the record. Yet Whitman's counsel essentially acknowledged Whitman made the application and the application would have stated Whitman was able to work.

-10-

Considering our deferential standard of review, substantial evidence exists in the record to support the ALJ's adverse credibility finding. See, e.g., Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) ("We do not re-weigh the evidence presented to the ALJ, and we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." (internal citation omitted)).

### D.      Remand Under 42 U.S.C. § 405(g)

Six months after Whitman filed his complaint in district court and a week after the matter was fully briefed, Whitman filed a motion to remand under 42 U.S.C. § 405(g) to permit the Commissioner to consider additional evidence not previously presented either to the ALJ or to the Appeals Council. Whitman claims the district court erred in denying his motion and contends the record should be expanded to include five additional pieces of medical evidence. We review the district court's denial of a motion to remand for abuse of discretion. See Mouser v. Astrue, 545 F.3d 634, 636 (8th Cir. 2008).

Section 405(g) permits a district court "at any time [to] order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "Material evidence is 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the [Commissioner's] determination.'" Krogmeier, 294 F.3d at 1025 (alteration in original) (quoting Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)).

### 1.      Cumulative Evidence

First, Whitman submits an additional note from Dr. Brunkhorst dated November 4, 2011, before the ALJ hearing and before Whitman's additional

submission to the Appeals Council. The note states, "*Right now* [Whitman] is complaining a lot of back pain and left leg pain," and "*[n]ow* he cannot sit for long times because of his back problems." (Emphasis added.) This note is not new evidence—predating the ALJ hearing, being cumulative of other evidence already in the record, and describing symptoms five months after the date last insured. The note is not "probative of the claimant's condition for the time period for which benefits were denied." Id. at 1025 (quoting Woolf, 3 F.3d at 1215).

The second record is a note dated January 25, 2012, for a lumbar spine x-ray taken that day, almost three months after the ALJ hearing. The note is partially cumulative, because it reports as to L5-S1, "Pattern is similar to patient's previous examination." The note also records a "milder degree of degenerative changes at L4-L5 and L3-L4. . . . Findings are mildly progressive from the patient's prior exam." Any new findings post-date Whitman's last date insured and thus do not relate to the denial period at issue. See, e.g., id.

Because these first two records are partially cumulative and are not probative of the applicable time period, the district court did not abuse its discretion by failing to remand for reconsideration.

### 2. Other New Evidence

The third and fourth medical records consist of notes evaluating a cervical spine MRI taken January 20, 2012, and a cervical spine x-ray taken January 16, 2012. These notes are not cumulative, because no MRI or x-ray of the cervical spine previously appears in the record. The physician who read the MRI describes five cervical abnormalities, and the physician who read the x-ray describes two cervical

abnormalities.  Neither physician indicates with any specificity when the cervical abnormalities might have had their onset.[4]

Fifth, Whitman provides a medical exam note dated December 3, 2012, for an examination on November 2, 2012, almost a year after the ALJ hearing and sixteen months after the date last insured.  The examining physician, Farid Manshadi, M.D., lists nine conditions, including "[c]hronic low back pain," "moderately severe narrowing at L5-S1 and mild narrowing at L4-5," "[n]eck pain," and "severe arthritis" in the right thumb.  Dr. Manshadi states he "[does] not believe Mr. Whitman is able to work even part-time *at this point*," but does not state whether that opinion would apply to the time sixteen months earlier, before Whitman's date last insured. (Emphasis added.)  Dr. Manshadi states,

> Mr. Rick Whitman is not gainfully employable due to significant arthritic changes in his hands as well as reduced strength in his hands, reduced range of motion in both shoulders due to rotator cuff syndrome, and significant limitation in his neck range of motion as well as in his low back and weakness in his left lower extremity.

Dr. Manshadi concludes, "Mr. Whitman's lifting abilities are very negligible and I recommend no lifting of more than 20 pounds and that is only from the waist up."  Dr. Manshadi also suggests restrictive physical limitations for daily activities, similar to an RFC, "[f]or the time period March 8, 2010[5] to November 23, 2011," which includes time before Whitman's date last insured, June 30, 2011.

---

[4]At the ALJ hearing, Whitman stated, "I have a neck problem that hasn't been diagnosed yet."

[5]Presumably Dr. Manshadi uses the March 8, 2010, onset date because it is the date of Whitman's initial back x-ray, where Dr. Holthaus found "[n]o lumbar spine fracture or dislocation" and "normal alignment," but "[m]oderately severe L5-S1 degenerative disk disease."

### 3.    Good Cause

Assuming, without deciding, that the third, fourth, and fifth pieces of new evidence are material, non-cumulative, and related to the denial period at issue, we must nonetheless agree with the district court that Whitman has failed to show "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Whitman points to his status as a pro se claimant as evincing good cause.

Before the ALJ hearing, the Commissioner advised Whitman, in writing, of his right to legal representation, instructing, "Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative." At the hearing, the ALJ specifically asked Whitman whether he wanted to be represented by counsel:

> You're here today without legal representation. You have the absolute
> right to have legal representation. If you were to ask, I would give you
> a one time continuance to go find someone to help you present your case.
> While it's not necessary, that's something that could be helpful to you.
> Does this sound like something you might be interested in?

Whitman answered, "No, sir." As the Commissioner's brief persuasively argues, "Under the logic of plaintiff's argument, *any* pro se plaintiff—solely by virtue of his pro se status—would have good cause to submit additional evidence after the ALJ had issued his decision and after the Appeals Council has denied review of that decision."

Whitman has provided no explanation as to why he did not provide objective, supporting medical evidence before the ALJ hearing, other than his decision to ignore the ALJ's advice and proceed pro se. "[H]is miscalculation in this regard does not supply good cause," Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991), for failing to obtain objective evidentiary support in the first instance. The district court

noted that Whitman: (1) knowingly declined the opportunity to continue the hearing and obtain counsel; (2) stated he was under a doctor's care for medication only; and (3) delayed his motion to remand for six months after finally obtaining counsel. We agree with the district court: "Under such circumstances, . . . Whitman has failed to show good cause for remand under 42 U.S.C. § 405(g)." The district court did not abuse its discretion in denying Whitman's motion to remand under § 405(g).[6]

## III. CONCLUSION

We affirm.

_____

_____

[6]The statute also empowers "[t]he court . . . to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand under this provision is "proper [when] the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling." Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000). Because we affirm the district court's "substantive ruling" in favor of the Commissioner, no remand is warranted.

-15-