40 F.Supp.2d 1108 (1999)
Donald R. RHODES, Plaintiff,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant.
No. 1:97CV00170 FRB.
United States District Court, E.D. Missouri, Southeastern Division.
February 24, 1999.
*1109 *1110 Richmond A. Payne, Richmond A. Payne and Associates, Cape Girardeau, MO, for Donald R. Rhodes, plaintiff.
Maria C. Sanchez, Office of U.S. Attorney, St. Louis, MO, for Social Security Administration com Kenneth S. Apfel, defendant.

MEMORANDUM AND ORDER
BUCKLES, United States Magistrate Judge.
This cause is on appeal from an adverse ruling of the Social Security Administration. Presently pending before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. All matters are pending before the undersigned United States Magistrate Judge, with consent *1111 of the parties, pursuant to 28 U.S.C. § 636(c).

I. Procedural History
On November 13, 1995, plaintiff Donald Rhodes filed an application for disability insurance benefits pursuant to Title II, 42 U.S.C. §§ 401, et seq. (77-82), and an application for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 57-62).[1] Plaintiff alleged that he became disabled on September 25, 1995 due to fibromyalgia,[2] asthma and diabetes.[3] (Tr. 94). On initial consideration (Tr. 52-56, 72-76) and reconsideration (Tr. 47-51, 65-69), the Social Security Administration denied plaintiff's claims for benefits.
On September 4, 1996, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 31-46). Plaintiff testified and was represented by counsel. (Id.) Plaintiff's wife also testified at the hearing. (Tr. 45). Thereafter, on December 20, 1996, the ALJ issued a decision denying plaintiff's claims for benefits. (Tr. 15-26). After considering the contentions raised in plaintiff's request for review and additional medical evidence, on September 27, 1997, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 3-5, 10-14, 202-31). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

II. Evidence Before the ALJ

A. Plaintiff's Testimony
At the hearing on September 4, 1996, plaintiff testified in response to questions posed by the ALJ and counsel. Plaintiff is thirty-nine years of age. (Tr. 34). Plaintiff completed ninth grade and lives with his current wife and two children ages nine and fifteen. Plaintiff testified that he has technical training as a truck driver. (Tr. 34).
Plaintiff testified that from November 23, 1973 through April 18, 1974, he served in the Army as an auto mechanic. (Tr. 35-36). Plaintiff testified that he continued working as a truck driver and/or an auto mechanic except when he worked for Farrow Mobile Homes. (Tr. 36). In particular, plaintiff testified that he cannot return to work as a truck driver because his medication causes drowsiness. He also testified that he could not unload a truck without having an asthma attack. (Tr. 44-45).
Plaintiff testified that Drs. Isaacs and Chaudhari are his treating physicians. In particular, plaintiff testified that Dr. Isaacs has treated him for chronic obstructive pulmonary disease and Dr. Chaudhari has treated him for fibromyalgia. (Tr. 36). Plaintiff testified that the fibromyalgia causes daily pain in his joints, back, neck, shoulders and wrists and that he experiences problems moving and walking. (Tr. 37). Plaintiff also testified that his joint and back pain prevents him from sleeping at night more than two to three hours. (Tr. 37). Plaintiff testified that he gets up two to three times during the night. (Tr. 39). Plaintiff described his lack of energy and his constant fatigue. (Tr. 38).
*1112 During the hearing, plaintiff testified that he is able to write and to read except when his muscles are swollen which causes his vision to be blurred. (Tr. 34). Plaintiff testified that he experiences this blurred vision every day. (Tr. 35). Plaintiff reported that Dr. Isaacs told him that nothing could be done to prevent the blurred vision.
Plaintiff testified that his home duties and daily living are restricted because of his condition. (Tr. 39). Plaintiff testified that he does not drive because he is unable to concentrate. (Tr. 39). As to his daily activities, plaintiff testified that he cannot dress himself without assistance. (Tr. 40). Plaintiff also testified that he cannot cook for himself because he cannot stand long enough to cook anything. Plaintiff also testified that he cannot vacuum because he cannot bend over to move anything without losing his balance and falling down. (Tr. 41). Plaintiff further testified that he cannot grocery shop because he cannot walk around the grocery store.
During a typical day, plaintiff testified that he spends about eight hours resting. (Tr. 43). His wife gets him out of bed and plaintiff eats breakfast on the couch. After breakfast, plaintiff watches television for thirty minutes and then falls asleep for about two hours. (Tr. 43). Plaintiff testified that around one o'clock his wife helps him to the bathroom and then serves him dinner. Plaintiff testified that he returns to the couch and sleeps until three or four o'clock in the afternoon. The rest of his day consists of watching the news and lounging until bed time. (Tr. 43). Plaintiff testified that at least twice a week he has constant pain. (Tr. 44).
Plaintiff testified that he uses a wheelchair twice a week so that he can go places like the grocery store or Wal-Mart. (Tr. 41). Plaintiff testified that he cannot stoop or squat. (Tr. 41). Plaintiff also testified that he can walk without problems for half a block. (Tr. 41-42). If he had to walk two blocks, however, plaintiff opined that he would have to sit down and rest in between the two blocks because of his asthma. Plaintiff also testified that he cannot stand for more than five minutes. If he had to stand twenty minutes, plaintiff testified that he would fall down. (Tr. 42). Plaintiff testified that he sometimes has problems lifting a gallon of milk. Plaintiff estimates that he can sit for ten minutes before experiencing back and hip pain. (Tr. 43). Plaintiff testified that he is presently taking medications for his pain and submitted a list of the medications to the ALJ. (Tr. 44).

B. Testimony of Rachel Rhodes
Plaintiff's wife, Rachel Rhodes, testified at the hearing that plaintiff depends on her and that she tries to get plaintiff out of the house twice a week. (Tr. 45). Mrs. Rhodes explained that her husband has not been in his present state his whole life. During the past year, she has observed plaintiff's conditions to have worsened. (Tr. 45).

C. Open Record
At the conclusion of the hearing and at the request of plaintiff's counsel, the ALJ stated that he would hold the record open for thirty days so that plaintiff's counsel could submit Dr. Chaudhari's report. (Tr. 46). A review of the record shows that counsel failed to timely submit such evidence to the ALJ but submitted Dr. Chaudhari's report and other medical records to the Appeals Council. Two letters from his former employers were also submitted to the Appeals Council. (Tr. 3-5).[4]

*1113 III. Medical Records[5]
On November 24, 1992, Dr. Khalid Khan examined plaintiff who complained of shortness of breath. On referral by Dr. Wulfers for a pulmonary evaluation, Dr. Khan's impression concluded asthma and possible cystic fibrosis. (Tr. 172-73). The pulmonary function tests were normal. (Tr. 173-74). Plaintiff reported that he had worked as a truck driver since 1982 but he was fired from that position three weeks earlier. (Tr. 172).
The pulmonary function study of December 1, 1992 revealed that plaintiff's lung volumes were inconsistent with air trapping. (Tr. 166). Dr. R.F. Sacha's impression concluded that plaintiff demonstrated a mild obstructive ventilatory defect with evidence of reversibility primarily in the mid flows. Dr. Sacha noted that he would suggest that plaintiff refrain from smoking in order to avoid any further deterioration of his lung status. (Tr. 166).
The Pulmonary Function Questionnaire of December 1, 1992 completed by Dr. Khan listed plaintiff's present complaint as "chest tight-tight cough." (Tr. 167). Dr. Khan noted that in the Pertinent Lab section as follows: "Disabled since 11-10-92." (Tr. 167). In the smoking history, Dr. Khan marked plaintiff as a smoker of one half pack of cigarettes a day for over twenty years. The Paranasal Sinus report completed by Dr. Mike Higgins as requested by Dr. Kahn noted some mild mucoperiosteal thickening with no other significant air fluid levels identified. (Tr. 172).
In a letter of October 27, 1995, reporting plaintiff's visit to the Mayo Clinic on Dr. George Ringland's referral, Dr. Kathryn Levy reported seeing plaintiff because of his shortness of breath, joint pains and fatigue. (Tr. 113, 139). Her assessment based on the evaluation of October 6-11, 1995 concluded by finding that plaintiff had fibromyalgia, asthma and disordered sleep cycle. (Tr. 114-15). With respect to plaintiff's asthma, Dr. Levy noted that there had probably been no significant change in flow rates compared to the study of August 24, 1994. (Tr. 114). Dr. Levy recommended Serevent, Vanceril, Proventil, yearly influenza vaccine and early antibiotics for upper respiratory infections. With respect to plaintiff's fibromyalgia, Dr. Levy recommended that plaintiff attend a fibromyalgia education class and begin taking Elavil each night and titrate under the supervision of his local physician. (Tr. 114). With respect to plaintiff's disordered sleep cycle, Dr. Levy noted plaintiff failed to complete the evaluation because plaintiff was unable to stay. (Tr. 115). In her general history notes, Dr. Levy noted that plaintiff had stopped smoking two months ago after smoking for thirty years. (Tr. 123). On the ETU record from the Mayo Medical Center of St. Mary's Hospital, plaintiff indicated that he did not have a usual health care provider. (Tr. 141).
On November 1, 1995, plaintiff was admitted to St. Francis Medical Center complaining of shortness of breath, dyspneic, water brash at times and coughing up yellow-brownish sputum. (Tr. 150, 154-55). The emergency room record lists shortness of breath as plaintiff's chief complaint. (Tr. 155). Plaintiff's past medical history has the notation "negative for diabetes." A review of plaintiff's symptoms showed a productive cough and shortness of breath with wheezing. (Tr. 155). The emergency room course of treatment noted that plaintiff was admitted for IV steroid therapy and intense beta agonist therapy. (Tr. 156, 158). Plaintiff was diagnosed with right middle lobe pneumonia and acute exacerbation of asthma. (Tr. 155-58).
*1114 During plaintiff's history and physical examination at the time of his admission, Dr. Jerry Karr listed as plaintiff's chief complaint elevated temperature with respiratory distress. (Tr. 157). After examining plaintiff, Dr. Charles Pewitt noted that plaintiff was moderately distressed with ongoing pneumonitis and therefore he recommended admitting plaintiff for further evaluation and treatment. (Tr. 157, 161). Plaintiff reported his smoking habit of one pack of cigarettes a day for all of his life and the fact that he stopped smoking a month earlier. Plaintiff also reported that he was currently laid off from his work as a truck driver. (Tr. 157). On his admission record, plaintiff noted Delta Express as his employer. (Tr. 162).[6]
Plaintiff's radiology report revealed a normal chest with unremarkable soft tissues and osseous structures. (Tr. 152). Dr. Isaacs was noted as plaintiff's primary family physician. (Tr. 154). An abdominal sonogram performed at the request of Dr. Charles Pewitt showed plaintiff's abdomen to be within normal limits. (Tr. 148, 160). Plaintiff's nocturnal oximetry at Saint Francis Medical Center noted some artifact. (Tr. 146-47).
On November 6, 1995 at the request of Dr. Victor Isaacs, Dr. Khalid Khan examined plaintiff and prepared a consultation report. (Tr. 150-51). Plaintiff reported that he developed breathing problems three years earlier and the problems had progressively worsened. (Tr. 150). Plaintiff reported that he was diagnosed with chronic obstructive pulmonary disease and asthma during his evaluation at the Mayo Clinic. Plaintiff reported that he started smoking at age nine and smoked almost a pack a day. Plaintiff reported that he had stopped smoking a month earlier and at that time he was smoking one half pack a day. (Tr. 150). Dr. Khan's impression included chronic obstructive pulmonary disease, severe asthma and bronchitis. (Tr. 151).
Plaintiff was discharged on November 11, 1995, and was diagnosed, in relevant part, with pneumonia, acute exacerbation of chronic severe asthma, and chronic obstructive pulmonary disease. (Tr. 159). Plaintiff's medications at the time of discharge included Darvocet, Atrovent inhaler, Proventil inhaler, Tussi-Organidin DM, Vanceril inhalers, Elavil, Prednisone, and E-mycin. (Tr. 160).
At a post hospital check up on November 15, 1995, Dr. Isaacs prescribed various medications including Vanceril inhaler, Serevent inhaler, Elavil, Prednisone and Humbid. (Tr. 191). On November 20, 1995, plaintiff called for and Dr. Isaacs ordered a refill of Theophyline and prescribed Bioxin. (Tr. 190). On December 4, 1995, Dr. Isaacs treated plaintiff for a rash. (Tr. 188). On December 13, 1995, plaintiff called Dr. Isaacs' office requesting a prescription for a different pain medication and Dr. Isaacs prescribed Darvocet. (Tr. 187). On January 3, 1996, plaintiff called Dr. Isaacs' office for a refill of Darvocet and Theophyline. (Tr. 185). On January 11, 1996, plaintiff visited Dr. Isaacs' office reporting a lung infection, pain all over and problems sleeping. (Tr. 184). Dr. Isaacs found pleurism widespread and muscular rheumortum and prescribed Halium, Keflex, Theodur and Cornat as treatment. (Tr. 184). On January 17, 1996, plaintiff visited Dr. Isaacs for a recheck and reported that he was unable to sleep and experienced dizziness, nausea and problems walking at times. (Tr. 183). Dr. Isaacs determined fibromyalgia in his assessment. Plaintiff's next visit to Dr. Isaacs was scheduled for January 31, 1996 at 9:00 am. On January 25, 1996, plaintiff called for a refill of Hydrocodone, Keflex and Halcion. (Tr. 182). The record before the undersigned does not contain any treatment notes dated January 31, 1996 from Dr. Isaacs.
*1115 In a letter of January 31, 1996, Dr. A.B. Chaudhari thanked Dr. Isaacs for his referral of plaintiff and reported plaintiff's medical state after his examination and his proposed course of treatment. (Tr. 176-79).[7] Dr. Chaudhari noted that plaintiff "appears to be some discomfort and at least it is not clear at this point in time whether he is in genuine pain or there is some element of showing." (Tr. 178). Dr. Chaudhari's impression concluded generalized fibromyalgia and depression. (Tr. 178). On March 1, 1996, Dr. Chaudhari prescribed Serzone, Cytotex, Ultram, Baclofen, Anitriptyline, Prednisone, and Depakote. (Tr. 192-93). On March 27, 1996, Dr. Chaudhari wrote a prescription as follows: "Mr. Rhodes is totally disabled. His Soc. Sec. disability is in process." (Tr. 193).
In a letter of February 26, 1996 from the Wills Chiropractic Center, Mr. James Wills reported that on January 23, 1996 plaintiff visited his office seeking treatment for fibromyalgia and complaining of general body pain especially in the joints. (Tr. 180). Plaintiff reported a past history of multiple steroid injections and amphetamine use. (Tr. 180).
Dr. Chaudhari's patient progress notes of February 29, 1996 noted that plaintiff returned for a reevaluation. (Tr. 175). Plaintiff reported that he was still experiencing aches and pains. Dr. Chaudhari's impression noted fibromyalgia, depression and migraine headaches. Dr. Chaudhari's treatment plan included various medications with a follow-up visit in four months. (Tr. 175). Plaintiff's attorney is listed as a copy recipient at the bottom of the patient progress note. (Tr. 175).
During May of 1996, plaintiff called Dr. Chaudhari's office requesting Depakote samples on May 1, 1996, requesting Serzone samples on May 15, 1996 and requesting Depakote samples on May 24, 1996. (Tr. 207).
Dr. Chaudhari's patient progress notes of July 8, 1996 noted that plaintiff returned for a reevaluation. (Tr. 206). Plaintiff reported pain in the joints and in the cervicodoral junction and inability to have any sustained activity. Dr. Chaudhari's examination showed no obvious sensory or motor deficit in plaintiff's limbs although Dr. Chaudhari noted that plaintiff's movements were somewhat limited because of either pain in the joints or lack of exertion. (Tr. 206). Dr. Chaudhari's impression ruled out fibromyalgia, Lyme's disease, rheumatoid arthritis and chronic fatigue syndrome. Dr. Chaudhari's impression noted depression, migrainous headaches and chronic obstructive pulmonary disease. Dr. Chaudhari's plan of treatment included medications, Serzone, Amitriptyline, Motrin and Depakote, and reevaluation in three months.
Dr. Chaudhari's patient progress notes of October 9, 1996 noted that plaintiff returned for a reevaluation. (Tr. 205). Plaintiff reported depression on account of aches and pains all over his body. Plaintiff reported that he last worked on September 25, 1995. During his examination, Dr. Chaudhari noted that plaintiff had some degree of stiffness at the joints and limited dexterity of the fingers. Dr. Chaudhari's impression ruled out fibromyalgia, Lyme's disease, rheumatoid arthritis and chronic fatigue syndrome. (Tr. 205). Dr. Chaudhari's impression diagnosed depression and moderate hypertension. (Tr. 205). Dr. Chaudhari's treatment plan included medications, Motrin, Amitriptyline, Flexeril, Depakote and Lorcet, and reevaluation in four months. (Tr. 204).
On February 1, 1997, Dr. Chaudhari completed a Fibromyalgia Residual Functional *1116 Capacity Questionnaire form. (Tr. 213- 216).[8] Dr. Chaudhari reported seeing plaintiff every month since February of 1996 to the present. (Tr. 213). Dr. Chaudhari listed as plaintiff's diagnosed impairments migraine headaches, chronic obstructive pulmonary disease and depression with his impairments expected to last at least twelve months. Dr. Chaudhari also indicated that plaintiff satisfied the American Rheumatological criteria for fibromyalgia. Dr. Chaudhari identified plaintiff's symptoms as including multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, numbness and tingling, breathlessness and depression. Dr. Chaudhari reported that plaintiff is not a malingerer and that emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. (Tr. 213). Dr. Chaudhari listed plaintiff's pain as located in his shoulders, arms, hands/fingers, hips, legs and knees/ankles/feet. (Tr. 214). Dr. Chaudhari described plaintiff's pain as moderate to severe all the time. Dr. Chaudhari opined that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations set forth by him in the evaluation. Dr. Chaudhari reported that plaintiff experienced enough pain to interfere with his concentration and attention span. Dr. Chaudhari further opined that plaintiff was severely limited in his ability to deal with work stress. (Tr. 214).
Dr. Chaudhari estimated that plaintiff's impairments prevented him from walking more than a quarter of a city block without resting, from sitting more than ten minutes and from standing more than fifteen minutes. (Tr. 215). Dr. Chaudhari further opined that plaintiff could not sit or stand/walk more than two hours in an eight hour working day. Dr. Chaudhari noted that plaintiff could perform a job which permitted shifting positions and which permitted unscheduled breaks every fifteen to thirty minutes for at least ten minutes at a time. Moreover, Dr. Chaudhari noted that plaintiff's feet should be elevated four feet for thirty percent of an eight hour work day. (Tr. 215). Dr. Chaudhari estimated that plaintiff could occasionally lift less than ten pounds. (Tr. 216). Dr. Chaudhari reported that plaintiff's impairments would cause significant limitations of his ability to perform repetitive reaching, handling or fingering. Dr. Chaudhari estimated that plaintiff would likely miss work more than three times a month because of his impairments. (Tr. 216).
Dr. Chaudhari's patient progress notes of February 10, 1997 noted that plaintiff was in the office for a reevaluation. (Tr. 203). Plaintiff reported that aches and pains in his muscles were persistent and that the medications were not very effective in alleviating the pain. During his examination of plaintiff, Dr. Chaudhari noted that plaintiff had probable global weakness in all four limbs and the pain in his muscles and joints restricted his movements. Dr. Chaudhari's impression noted fibromyalgia, depression, migrainous headaches, moderate hypertension and myoclonic jerks. Dr. Chaudhari's treatment plan included medications, Motrin, Amitriptyline, Klonopin, Prednisone and Pepcid, and reevaluation in one month. (Tr. 203).
Dr. Chaudhari's patient progress notes of March 12, 1997 noted that plaintiff returned for a reevaluation complaining of aches and pain and insomnia. (Tr. 228). *1117 Dr. Chaudhari's impression noted fibromyalgia, depression, migrainous headaches, chronic obstructive pulmonary disease, mild hypertension and nocturnal myoclonic jerks. (Tr. 228). Dr. Chaudhari's treatment plan included medications, Indomethacin, Depakote, Amitriptyline, Klonopin, Prednisone, Pepcid, Lorcet and Restoril. Physical therapy, massage and ultrasound treatment was also suggested. (Tr. 229).

IV. The ALJ's Decision
The ALJ found plaintiff's impairments to be fibromyalgia, asthma, sleep disorder and depression but that he did not have an impairment or combination of impairments listed in, or medically equivalent to, one listed in Appendix 1 Subpart P, Regulation No. 4. (Tr. 18). The ALJ also found that plaintiff's statements regarding his inability to perform any substantial gainful activity not to be fully credible or supported by objective medical basis. (Tr. 18).
The ALJ found that plaintiff's earnings record established only a sporadic work history. (Tr. 23). The ALJ also noted that plaintiff has a history of drug abuse, including amphetamines, and that such abuse may have affected his job performance. (Tr. 23). The ALJ also found that plaintiff's inconsistent statements failed to enhance his credibility. (Tr. 23). Based on the evidence, the ALJ found that plaintiff's allegations that his impairments preclude any substantial gainful activity were not credible. (Tr. 24). The ALJ also found plaintiff's subjective complaints of disabling pain not to be fully credible and his symptoms to be not as limiting as claimed. The ALJ found that plaintiff's impairments at most precluded prolonged walking and standing; lifting more than ten pounds; and more than occasional climbing stooping, crawling and squatting. The ALJ found that plaintiff was capable of performing a near full range of sedentary work and that nothing in the evidence precluded plaintiff from performing a full range of sedentary work. The ALJ cited to the lack of medical evidence regarding continued treatment since February of 1996 as inconsistent with plaintiff's testimony that he can only eat, watch television, read, speak, sit on the couch and go to bed. The ALJ also determined that plaintiff's non-exertional limitations did not significantly compromise the range of sedentary work activity that he could perform. The ALJ found that plaintiff could not perform his past relevant work. (Tr. 24).
Based on plaintiff's age, education, past relevant work experience and residual functional capacity, the ALJ found that the Medical-Vocational Rules 201.24 through 201.26 of Table 1, Appendix 2, Subpart P, Regulations No. 4 would direct a finding that plaintiff was not disabled. See 20 C.F.R. 404.1520(f) and 416.920(f). (Tr. 25). Therefore, the ALJ concluded that plaintiff was not under a disability at any time through the date of his decision. (Tr. 26.)

V. Discussion
To be eligible for Social Security disability benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled. Baker v. Secretary Health & Human Servs., 955 F.2d 552, 555 (8th Cir.1992). To satisfy this initial burden, plaintiff must show that he has a "medically determinable impairment which precluded performance of previous work." Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir.1987); See also Johnston v. Shalala, 42 F.3d 448 (8th Cir.1994). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). A medically determinable impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be declared disabled "only if his *1118 physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In summary, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then he is not disabled. The Commissioner next determines whether claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment is equivalent to one of the listed impairments, he is conclusively disabled. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.
The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); Young v. Shalala, 52 F.3d 200, 202 (8th Cir.1995) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)); Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Porch v. Chater, 115 F.3d 567, 571 (8th Cir.1997); Woolf, 3 F.3d at 1213. In evaluating the substantiality of the evidence, the Court must consider evidence which supports the Commissioner's decision as well as any evidence which fairly detracts from the decision. Porch, 115 F.3d at 571. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf, 3 F.3d at 1213 (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir.1992)).
To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:
1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.
Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir.1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir.1989)).
The Court must also consider any "evidence which fairly detracts from the ALJ's findings." Groeper, 932 F.2d at 1237. However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 *1119 (8th Cir.1992) (citing Cruse, 867 F.2d at 1184).
Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to consider the report of a treating physician, Dr. Chaudhari, and his recent patient progress notes. Plaintiff also claims that the ALJ erred by not awarding a period of disability and disability benefits because plaintiff's subjective complaints of pain were sufficient to warrant such an award commencing on September 25, 1995.

A. Opinions of Treating and Examining Physicians

Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to consider the report of a treating physician and his recent patient progress notes. Inasmuch as the "report" was not in existence at the time of the hearing or the ALJ's decision, the ALJ could not have erred by failing to consider the "report."
"Ordinarily, a treating physician's opinion should be given substantial weight." Metz v. Shalala, 49 F.3d 374, 377 (8th Cir .1995) (interim citation omitted). However, a treating physician's opinion is not conclusive in determining disability status and must be supported by acceptable clinical or diagnostic data. Pena v. Chater, 76 F.3d 906, 908 (8th Cir.1996). Likewise, a treating physician's opinion is entitled only to limited weight "if the opinion consists only of conclusory statements." Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir.1995). When a physician does not set forth the specific nature of a claimant's limitations and does not support his finding of disability with objective medical evidence, the ALJ can accord whatever weight he deems warranted to the physician's statements. Russell v. Secretary of HEW, 402 F.Supp. 613, 619 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir. 1976). A treating physician's opinion "does not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995).
Plaintiff also claims that the ALJ erred in discrediting Dr. Chaudhari's medical opinion that plaintiff's fibromyalgia condition precluded him from working and had a moderately severe effect upon plaintiff's functioning. Plaintiff argues that the ALJ should have, but failed to, give great weight to Dr. Chaudhari's opinion inasmuch as Dr. Chaudhari was plaintiff's treating physician. A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence on the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Absent these two prerequisites, it is an error to give an opinion controlling weight simply because it is the opinion of the treating physician.
If the opinion of a treating physician is not well supported or is inconsistent with other evidence, the ALJ must consider the following factors to determine what weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d)(2)(6).
Although the ALJ failed to specifically mention the factors listed in 404.1527(d), the ALJ applied the factors when determining the weight to be given to Dr. Chaudhari's opinion. The ALJ determined *1120 to give Dr. Chaudhari's opinion little weight because Dr. Chaudhari's findings were not consistent with plaintiff's allegations of disabling fibromyalgia. Moreover, when a doctor offers inconsistent opinions, the opinions should be given less weight. Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir.1996). Indeed, Dr. Chaudhari's impression of February 29, 1996 diagnosed fibromyalgia but his impressions of July 8, 1996 and October 9, 1996 ruled out fibromyalgia. In direct contradiction with his impressions on July 8 and October 9, 1996, Dr. Chaudhari completed the Fibromyalgia Residual Functional Capacity Questionnaire form ("report") finding that plaintiff met the American Rheumatological criteria for fibromyalgia even though the last two times he examined plaintiff for evaluations he ruled out fibromyalgia. Inasmuch as Dr. Chaudhari's opinion was not supported by clinical and diagnostic techniques and was inconsistent with the record as a whole, it is likely that the ALJ would have rejected Dr. Chaudhari's opinions in the "report" finding these conclusions not case dispositive on the ultimate issue if this evidence had been presented to him.
Dr. Chaudhari's February 1, 1997 "report," in which he concluded that plaintiff was limited in his capacity to work, does not contain any clinical or diagnostic data to support the conclusions made therein. Nor does Dr. Chaudhari's opinion refer to any such data upon which his conclusion is based. Indeed, in his last two evaluations of plaintiff, Dr. Chaudhari had ruled out fibromyalgia and then without seeing plaintiff for another evaluation, Dr. Chaudhari found plaintiff to be disabled based on his fibromyalgia. Further, plaintiff does not refer the Court to, nor does independent review of the record reveal, any data upon which Dr. Chaudhari's conclusion is based. As such, any opinion as to plaintiff's disability as set out in the report is not entitled to great weight. See, e.g., Woolf v. Shalala, 3 F.3d 1210, 1213-14 (8th Cir.1993) (opinion may be discounted when there is no testing to support opinion).
In the instant cause, the ALJ recognized Dr. Chaudhari to be a treating physician but nevertheless determined Dr. Chaudhari's opinion as to plaintiff's alleged disability to be entitled to little weight. The ALJ specifically noted Dr. Chaudhari's opinion of plaintiff's limited physical functional capacity to be contradicted by the other medical evidence on the record. Indeed, no other treating physician ever opined that plaintiff was disabled or unable to work the full range of sedentary work on account of fibromyalgia or other conditions. Dr. Chaudhari's statement in his February 1, 1997 "report" is conclusory, not based upon any clinical or laboratory diagnostic techniques, and is not supported by the evidence contained in the record as a whole or his own patient progress notes. Thus, the ALJ would have given little weight to Dr. Chaudhari's conclusory opinion as to plaintiff's disability and his decision would not have been improper. See Metz, 49 F.3d at 377 (physician's conclusory statement without supporting evidence does not amount to substantial evidence of disability); Woolf, 3 F.3d at 1213-14 (physician's opinion may be discounted when based only on claimant's subjective complaints of pain and there is no testing or objective medical evidence to support opinion); Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) (physician's opinion must be supported by medically acceptable clinical or diagnostic data). In addition, when a physician does not set forth the specific nature of a claimant's limitations and does not support his finding of disability with objective medical evidence, the ALJ can accord whatever weight he deems warranted to the physician's statements. Metz, 49 F.3d at 377 (where statements are conclusory in nature, the ALJ is free to discount statements in favor of the contrary medical opinion of a consulting physician).
A review of the ALJ's decision shows the ALJ to have discussed all the medical evidence contained in the record and the reports made by the various physicians who examined plaintiff. Inasmuch as *1121 there is no clinical or diagnostical data to support Dr. Chaudhari's conclusory opinions in his "report" and in that he ruled out fibromyalgia in his patient progress notes of July and October 1996, this Court finds that the ALJ would have properly accorded little weight to Dr. Chaudhari's opinions contained in the report.
The undersigned notes that the only support for plaintiff's claim of debilitating side effects of medication is Dr. Chaudhari's cursory finding in his report. The ALJ's finding that no medical evidence supports a finding that plaintiff had persistent and adverse side effects due to his medications resulting in significant limitations of his functional capacity is supported by substantial evidence. The ALJ would have made the same finding even if Dr. Chaudhari's report had been submitted to him in light of this finding being inconsistent with the evidence as a whole.
To the extent that Dr. Isaacs' opinion contained in the prescription of March 27, 1996, that plaintiff was totally disabled, appears to be an opinion that plaintiff should be determined to be disabled, the ALJ did not err when he found this opinion to be accorded little weight. In particular, the ALJ found Dr. Isaacs' opinion to be conclusory and inconsistent with the evidence as a whole. Likewise, the ALJ determined that Dr. Isaacs' opinion was based chiefly on plaintiff's complaints, and not on any clinical testings and findings. Moreover, a statement by a physician that a claimant is disabled does not mandate a finding that the claimant is disabled. 20 C.F.R. § 416.927(e)(1) (1996). Instead, an ALJ must review all of the medical findings and other evidence to determine whether a claimant meets the statutory definition of disability. Id. The issue of whether a claimant suffers from a disability, as defined in the Social Security Act, is an issue expressly reserved to the Commissioner. Id. The Commissioner need not give great or controlling weight to the conclusions of a physician regarding a claimant's disability if that conclusion is not supported by evidence in the record or is merely conclusory. Ward, 786 F.2d at 846 (medical opinion unsupported by record). A treating physician's opinion is entitled only to limited weight "if the opinion consists only of conclusory statements." Chamberlain, 47 F.3d at 1494. When a physician does not set forth the specific nature of a claimant's limitations and does not support his finding of disability with objective medical evidence, the ALJ can accord whatever weight he deems warranted to the physician's statements. Russell, 402 F.Supp. at 619. Because Dr. Isaacs' opinion of March 27, 1996 is not supported with objective medical evidence and does not set forth the specific nature of plaintiff's limitations, as noted by the ALJ, the ALJ did not err in giving this opinion little weight.
In addition, where there are conflicts in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir.1979). This is so even when the medical evidence is in conflict. Driggins v. Bowen, 791 F.2d 121, 124 (8th Cir.1986) (citing Beasley, 608 F.2d at 1166). In the instant cause, the ALJ gave good reason to discount Dr. Chaudhari's opinion, and substantial evidence on the record as a whole supports the ALJ's reasoning. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf, 3 F.3d at 1213 (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir.1992)).

B. Credibility of Plaintiff

Plaintiff claims that the ALJ erroneously discredited plaintiff's testimony and argues that the medical evidence supports plaintiff's complaints of pain. In particular, plaintiff asserts that the ALJ inadequately cited to the inconsistencies in the record.
The determination of plaintiff's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987). "As *1122 is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Spradling, 126 F.3d at 1072, 1074 (8th Cir.1997) (quoting Woolf, 3 F.3d at 1213). The ALJ may not discredit plaintiff's complaints solely because they are unsupported by objective medical evidence. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all evidence relating to the plaintiff's subjective complaints, including the plaintiff's prior work record and third party observations as to:
1. claimant's daily activities;
2. duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.
Polaski, 739 F.2d at 1322. Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. Id.
Although the ALJ may not discount subjective complaints on the sole basis of personal observation, he may disbelieve claimant's complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322; see Sullins v. Shalala, 25 F.3d 601, 603 (8th Cir.1994) (the ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole). An ALJ must do more than merely invoke Polaski to insure "safe passage for his or her decision through the course of appellate review." Harris v. Shalala 45 F.3d 1190, 1193 (8th Cir.1995). Where an ALJ expressly considers the Polaski factors but then discredits plaintiffs complaints for good reason, his decision should be upheld. Browning, 958 F.2d at 821; see also Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990) (if ALJ explicitly discredits claimant's testimony and gives good reason for doing so, court normally defers to ALJ's judgment).
In the instant case, the ALJ addressed several inconsistencies in the record that undermined plaintiff's subjective complaints and supported his conclusion that plaintiff's complaints of disabling pain were not credible. The record in this case is replete with inconsistencies. Specifically, the ALJ found that plaintiff's complaint of ongoing severe pain was not credible for the reason of plaintiff's lack of medical treatment. The ALJ noted that Dr. Sacha recommended that plaintiff refrain from smoking in 1992. Plaintiff, however, disregarded Dr. Sacha's recommendation and did not stop smoking or seek further medical treatment until October of 1995 at which time plaintiff reported that his shortness of breath had worsened.[9] The ALJ also noted that plaintiff's primary cause of illness and hospitalization in November 1995 was for pneumonia, not asthma or fibromyalgia, and that his symptoms were relieved through appropriate treatment. The ALJ noted that the records showed that plaintiff did not allege severe and disabling pain during his hospitalization. Moreover, the records noted no atrophy or loss of muscle tone. The ALJ also noted at the time of plaintiff's evaluation at the Mayo Clinic in October of 1995, plaintiff was not taking any pain medication and taking only Albuterol for his shortness of breath. The ALJ further noted that the records from the Mayo Clinic determined plaintiff to be functional at that time even though he reported severe joint pain for nearly three years in duration. The ALJ noted that plaintiff had neither received nor pursued any medical treatment for persistent complaints of joint pain for the three year period before his visit to the Mayo Clinic and thus the lack of medical evidence was inconsistent with his allegations of severe pain at that *1123 time. The record shows that at the time plaintiff filed his application plaintiff was not taking any medication for his pain. (Tr. 139). Benskin, 830 F.2d at 883-84 (complaints of pain inconsistent with lack of strong pain medication); cf. Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir.1996) ("[Claimant's] complaints of disabling pain and functional limitations are inconsistent with her failure to take prescriptive pain medication or to secure regular medical treatment for her symptoms"); Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir.1994) ("A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."). The ALJ also noted that at no time during the numerous examinations by his physicians did plaintiff report that he had persistent and adverse side effects due to his prescribed medications resulting in significant limitations of his functional capacity. The ALJ concluded that the lack of medical evidence failed to enhance plaintiff's credibility with respect to his claims of severe pain.
Although the ALJ noted the lack of objective medical evidence to support plaintiff's claim, the ALJ also noted that at the time of his application, it appeared that plaintiff took no significant pain medication. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir.1996); Wilson v. Chater, 76 F.3d 238, 241 (8th Cir.1996). In addition, the ALJ noted that prior to the time of his application plaintiff had been taking medication for various conditions and that such medication had not been found to be ineffective. See Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993) (impairment capable of being controlled by treatment or medication cannot be considered disabling).
Moreover, the ALJ noted that plaintiff's own statements are inconsistent and contradictory. Specifically, the ALJ noted that plaintiff listed diabetes as a disabling impairment even though plaintiff had never been diagnosed with or received treatment for diabetes. The ALJ determined that plaintiff's inclusion of diabetes as a disabling impairment undermined plaintiff's credibility with regard to the severity of his alleged symptoms. The ALJ also noted that plaintiff apprised Dr. Karr that he was laid off as a truck driver although plaintiff had claimed in his Vocational Report that in the last three years he had been fired from his jobs because he could not do the work. (Tr. 87) As a further contradiction, the letters from his former employers counter this remark. (Tr. 230-31). In particular, Marilyn Welty of Welty Trucking noted that plaintiff finally quit his job because of his deteriorating health. (Tr. 230). Likewise, the president of Delta Express explained how plaintiff voluntarily quit his job in September of 1995 because his health was not good enough to enable him to perform his job duties. (Tr. 232). Finally, the ALJ noted that there was no evidence that plaintiff suffered any side effects from his medication. These inconsistencies, as noted by the ALJ, are sufficient in determining that plaintiff's subjective complaints are not credible, and the ALJ's findings are supported by substantial evidence on the record as a whole.
Further, the ALJ cited as an inconsistency plaintiff's current lack of medical treatment since February of 1996. Plaintiff filed with the Appeals Council additional patient progress notes covering that time period. The Appeals Council determined that this additional evidence did not affect the ALJ's findings. When determining a claimant's credibility, an ALJ may consider the claimant's failure to seek medical attention. Benskin, 830 F.2d at 884. A claimant may demonstrate hardship, however, to excuse his failure to seek desired and/or recommended treatment. See Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir.1992). It is for the ALJ in the first instance to determine a claimant's motivation for failing to follow prescribed treatment or seek medical attention. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir.1989) (citing Benskin, 830 F.2d at 884 n. 1). In the instant cause, plaintiff offered no reasons for his failure to receive medical treatment. Thus, the ALJ determined that such lack of medical treatment was a sufficient basis upon which to find *1124 plaintiff not to be credible. Such reliance on lack of treatment was not error inasmuch as plaintiff offered no claims of hardship.
A review of the record as a whole shows the ALJ to have thoroughly considered plaintiff's subjective complaints and set out the inconsistencies detracting from his credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir.1990). In view of the many inconsistencies in the record cited by the ALJ, plaintiff's claim that the ALJ failed to give sufficient reasons for his determination is without merit. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir.1992).
Plaintiff also claims that the ALJ improperly relied on his work record in determining plaintiff's credibility. An ALJ may properly consider a claimant's work record in determining the claimant's credibility. Browning, 958 F.2d at 821 (analysis of prior work appropriate in assessing credibility); Polaski, 739 F.2d at 1322. In addition, a review of the ALJ's decision shows the ALJ not to have considered the fact that plaintiff continued to work in and of itself to render plaintiff's complaints of severe pain not credible. Instead, it appears that the ALJ's notation of plaintiff's continued work during the time he claims to have suffered disabling pain a basis for finding plaintiff's testimony not credible. Such work is inconsistent with complaints of disabling pain. See, e.g., Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). Therefore, contrary to plaintiff's assertion, the ALJ considered not only the lack of objective medical evidence in determining plaintiff's complaints of disabling pain not to be credible, but rather cited additional inconsistencies contained in the record as a whole in making such a determination.
The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. Robinson, 956 F.2d at 841.
Based on the foregoing, the ALJ determined that although plaintiff has alleged disabling pain because of his fibromyalgia, the substantial evidence on the record, including the plaintiff's testimony and the medical record, does not support plaintiff's description of disabling pain. With respect to his relevant past work history, the ALJ found that plaintiff is precluded from performing his past relevant work by his medically determinable impairments but he has the residual functional capacity to perform a near full range of sedentary work. The ALJ further found that considering the plaintiff's education, age, and residual functional capacity, the application of social security regulations directed a finding that the plaintiff was not disabled.

C. New Evidence

Plaintiff requests that the ALJ's decision be reversed and that he be awarded benefits. Specifically, plaintiff claims that the new evidence consists of Dr. Chaudhari's patient progress notes, progress update letter to Dr. Isaacs, and Fibromyalgia Residual Functional Capacity Questionnaire form, and letters from his former employers. The ALJ could not have had the benefit of reviewing the new evidence inasmuch as the form was not executed by Dr. Chaudhari until February 1, 1997 well after the date of the hearing and over a month after the ALJ entered his decision. This evidence was submitted to and considered by the Appeals Council prior to its determination to deny plaintiff's request for review of the ALJ's decision.
A review of the Appeals Council decision shows that the Appeals Council considered the additional evidence but nevertheless concluded that there was no basis upon which to review the ALJ's decision. (Tr. 3). Inasmuch as the Appeals Council considered *1125 the newly submitted evidence, remand for further consideration of the evidence would be inappropriate. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). In such circumstances, the Court generally must consider any new evidence submitted to and considered by the Appeals Council in determining whether the ALJ's decision was supported by substantial evidence. Id. Therefore, the Court would necessarily review Dr. Chaudhari's patient progress notes, progress update letter to Dr. Isaacs, and letters from his former employers and consider whether and how the ALJ would have weighed this evidence if it had been available to him when he made his final decision. Id.; see also Flynn v. Chater, 107 F.3d 617, 621-22 (8th Cir.1997).
This Court's review is required to consider how the ALJ would have weighed the evidence had it been before him at the time of his decision. Flynn, 107 F.3d at 622 (citing Riley 18 F.3d at 622). However, even considering Dr. Chaudhari's "report", the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Other than Dr. Chaudhari's conclusory opinions contained in the Fibromyalgia Residual Functional Capacity Questionnaire form, the only new relevant evidence was the patient progress notes of July 8 and October 9, 1996 and February 10 and March 12, 1997. After reviewing the new evidence submitted to and considered by the Appeals Council, the Court finds that this evidence would not have changed the administrative result in this case for the reasons outlined earlier in this memorandum. See, e.g. Riley, 18 F.3d at 623.
Because there is substantial evidence on the record as a whole to support the ALJ's decision, the Commissioner's determination that plaintiff is not disabled should be affirmed.
Therefore, for all of the foregoing reasons,
IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment (Docket No. 9/filed April 6, 1998) is denied.
IT IS FURTHER ORDERED that defendant's Motion for Summary Judgment (Docket No. 11/filed May 22, 1998) is granted.
Judgment shall be entered accordingly.
NOTES
[1] "Tr." refers to the page of the administrative record filed by the defendant with its Answer. (Docket No. 8/filed March 6, 1998).
[2] Fibromyalgia is muscle pain in the fibrous tissues. Stedman's Medical Dictionary 650, 1161 (26th ed.1995). It is a degenerative disease which results in symptoms such as achiness, stiffness, and chronic joint pain. See Cline v. Sullivan 939 F.2d 560, 567 (8th Cir.1991). Fibromyalgia can be disabling and often contributes to a general cycle of daytime fatigue and pain. Id. at 563.
[3] Although plaintiff alleges diabetes as a disabling impairment on his application, the medical record is devoid of any diagnosis of diabetes or treatment for diabetes. The ALJ found the fact that plaintiff listed diabetes as a disabling impairment even though he had never been diagnosed with or treated for diabetes undermined plaintiff's credibility with respect to the severity of his symptoms alleged. (Tr. 19, 104). The undersigned notes that plaintiff's past medical history as set out in a record of an emergency room visit to Saint Francis Medical Center on November 1, 1995 listed negative for diabetes. (Tr. 155).
[4] The undersigned notes for the record that some of Dr. Chaudhari's medical records are duplicative of earlier submitted medical records. See Dr. Chaudhari's letter of January 31, 1996 (Tr. 209-12, 176-79); Dr. Chaudhari's Patient Progress Notes of February 29, 1996 (Tr. 175, 208); Mayo Clinic results summary (Tr. 117, 218; 118, 217). Likewise, the additional medical records from Saint Francis Medical Center included data from different tests performed while plaintiff was admitted from November 1 through November 11, 1995 and the results of these tests can be found in the medical records submitted before the ALJ. See Saint Francis Medical Center's records (Tr. 144-63).
[5] Additional medical evidence was submitted to and considered by the Appeals Council subsequent to the ALJ's adverse decision. (Tr. 202-231). The Court must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir.1995); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir.1994). For the sake of continuity, discussion of this evidence is incorporated with that of the evidence before the ALJ at the time of his decision.
[6] On his work background, plaintiff listed his term of employment with Delta Express from May of 1995 through September of 1995. (Tr. 201). On his amendments to his application, plaintiff changed his last day he worked from October 25, 1995 to September 25, 1995. (Tr. 77).
[7] On his Reconsideration Disability Report dated January 31, 1996, plaintiff listed Dr. Chaudhari as a physician he had seen since he filed his claim and reported that he saw him monthly even though January 31, 1996 was the first time he saw Dr. Chaudhari. (Tr. 91, 176). Likewise, plaintiff reported seeing Dr. Isaacs every two weeks and on his Information About Your Medical Records form plaintiff reported seeing Dr. Isaacs three times a year for pneumonia and asthma even though plaintiff submitted medical records for a total of four office visits. (Tr. 91, 111).
[8] Plaintiff's counsel alleges that the ALJ erred in making his disability determination without the benefit of this report. Counsel asserts in the memorandum in support of plaintiff's summary judgment that these records were not received by counsel in time to be presented at the hearing. Pltf's Memo in Support at 3 (Docket No. 9/filed April 6, 1998). A review of the record, however, shows that the form was not in existence at the time of the hearing on September 4, 1996 or on the date the ALJ entered his decision on December 20, 1996 inasmuch as Dr. Chaudhari's report is dated February 1, 1997. (Tr. 213-16). Also, some of Dr. Chaudhari's patient progress notes submitted with this form had already been submitted to the ALJ before the hearing.
[9] The undersigned notes that plaintiff filed his applications for disability insurance benefits and supplemental security income in November of 1995. (Tr. 57-62, 77-82).